## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

UNITED STATES                  :

                                        :

                                        :

       v.                             :                   Civil No. CCB-13-1183

                                        :

                                        :

3 KNIFE-SHAPED COINS, *et al.*       :

## MEMORANDUM

This action is a civil forfeiture proceeding brought by the United States (the "government") under the Convention on Cultural Property Implementation Act ("CPIA"), 19 U.S.C. § 2601 *et seq.* The defendant property consists of three knife-shaped Chinese coins, 12 other Chinese coins, and seven Cypriot coins. The Ancient Coin Collectors Guild (the "Guild") has filed a claim of interest in the property. Now pending are the Guild's motion for summary judgment as to the coins numbered 1-22 on the stipulated coin documentation list,[1] (ECF No. 72), and the government's cross-motion for summary judgment as to the coins numbered 1-6, 12-13, and 16-22, (ECF No. 76). The motions have been fully briefed, and no hearing is necessary to their resolution. *See* Local Rule 105.6. For the reasons explained below, the Guild's motion will be granted as to coins 7-11 and 14-15 and denied as to coins 1-6, 12-13, and 16-22. The government's cross-motion will be granted as to coins 1-6, 12-13, and 16-22.

## BACKGROUND

In 1970, the United States became a signatory to the Convention on the Means of Prohibiting and Preventing the Illicit Import, Export and Transfer of Ownership of Cultural

---

[1] The parties have stipulated to a coin documentation list that assigns each coin a number and identifies it by description and weight. (Stipulation Related to Images of Defendant Property, Ex. A, ECF No. 73-1 ("Coin Documentation Materials").) The coins were weighed and photographed alongside their assigned numbers by a mutually agreeable conservator in July 2015. (*See id.*)

Property (the "Convention").  Nov. 14, 1970, 823 U.N.T.S. 231.  The purpose of the Convention was to protect cultural property from "the dangers of theft, clandestine excavation, and illicit export."  *Id.* pmbl.  The Convention defines the term "cultural property" to mean "property which . . . is specifically designated by each State as being of importance for archaeology, pre-history, history, literature, art or science."  *Id.* art. 1.  Under Article 9 of the Convention, any signatory to the Convention ("State Party") can request that another State Party take measures to protect its cultural property "from pillage," including by imposing import and export controls. *Id.* art. 9.

Congress enacted the CPIA to implement the Convention, which was not self-executing. Convention on Cultural Property Implementation Act, Pub. L. 97-446, tit. III, 96 Stat. 2350 (1983) (codified at 19 U.S.C. §§ 2601-2613).  The CPIA authorizes the president to impose import restrictions on certain items of cultural property at the request of a State Party.  19 U.S.C. § 2602.  When a State Party makes a request, the president must "publish notification of the request . . . in the Federal Register" and submit information regarding the request to the Cultural Property Advisory Committee ("CPAC").[2]  *Id.* § 2602(f).  CPAC is an 11-person committee, appointed by the president, whose members include "experts in the fields of archaeology, anthropology, ethnology, or related areas"; "experts in the international sale of archaeological, ethnological, and other cultural property"; representatives of the interests of museums; and representatives of "the interest of the general public."  *Id.* § 2605(b)(1).

---

[2] The text of the statute assigns CPIA functions to either the president or Secretary of the Treasury, but delegated authority currently lies with the Assistant Secretary of State for Educational and Cultural Affairs and U.S. Customs and Border Protection ("CBP"), an agency within the U.S. Department of Homeland Security.  *E.g.,* Exec. Order 12,555; 68 Fed. Reg. 10,627; 65 Fed. Reg. 53,795. CBP is responsible for promulgating regulations regarding import restrictions under the CPIA, Exec. Order 12,555; 68 Fed. Reg. 10,627, as well as enforcing import restrictions at ports of entry, 19 C.F.R. § 12.104i.

After CPAC receives notice of a request from the president, it is responsible for conducting an investigation and review to determine whether import restrictions are warranted. *Id.* § 2605(f))(1); *see id.* § 2602(a)(1).  CPAC then issues a report to Congress and the president that contains the results of this investigation and review, along with certain other findings and its recommendation regarding whether the United States should enter into an agreement or memorandum of understanding to implement Article 9 ("Article 9 agreement") with the State Party.  *Id.* § 2605(f)(1).  When CPAC recommends entering into an Article 9 agreement, its report also sets forth the types of material that should be covered.  *Id.* § 2605(f)(4).  After receiving this report, the president determines whether to enter into such an agreement.  *Id.* §§ 2602(a),(f).  The existence of an Article 9 agreement is a prerequisite to the imposition of import restrictions under the CPIA.  *See id.* § 2604.

The United States has Article 9 agreements with both Cyprus and China.  It entered into an agreement with Cyprus in 2002, 67 Fed. Reg. 47,447, following a period of emergency import restrictions, 64 Fed. Reg. 17,529.  This agreement was amended in 2006, 71 Fed. Reg. 51,724-25, and extended in 2007, 72 Fed. Reg. 38,470-71.  After the 2007 extension, CBP promulgated an amended list of material subject to the import restrictions ("designated list").  *Id.* at 38,471-73.  This list included the following:

D. Coins of Cypriot Types

Coins of Cypriot types made of gold, silver, and bronze including but not limited to:

1. Issues of the ancient kingdoms of Amathus, Kition, Kourion, Idalion, Lapethos, Marion, Paphos, Soli, and Salamis dating from the end of the 6th century B.C. to 332 B.C.

2. Issues of the Hellenistic period, such as those of Paphos, Salamis, and Kition from 332 B.C. to c. 30 B.C.

3. Provincial and local issues of the Roman period from c. 30 B.C. to 235 A.D. Often these have a bust or head on one side and the image of a temple (the Temple of Aphrodite at Palaipaphos) or statue (statue of Zeus Salaminios) on the other.

*Id.* at 38,473.

The United States and China entered into an Article 9 agreement in January 2009. 74 Fed. Reg. 2,839. CBP then promulgated a list of articles subject to CPIA restrictions, which included the following:

3. Coins.

a. Zhou Media of Exchange and Toolshaped Coins: Early media of exchange include bronze spades, bronze knives, and cowrie shells. During the 6th century BC, flat, simplified, and standardized cast bronze versions of spades appear and these constitute China's first coins. Other coin shapes appear in bronze including knives and cowrie shells. These early coins may bear inscriptions.

b. Later, tool-shaped coins began to be replaced by disc-shaped ones which are also cast in bronze and marked with inscriptions. These coins have a central round or square hole.

c. Qin: In the reign of Qin Shi Huangdi (221-210 BC) the square-holed round coins become the norm. The new Qin coin is inscribed simply with its weight, expressed in two Chinese characters ban liang. These are written in small seal script and are placed symmetrically to the right and left of the central hole.

d. Han through Sui: Inscriptions become longer, and may indicate that inscribed object is a coin, its value in relation to other coins, or its size. Later, the period of issue, name of the mint, and numerals representing dates may also appear on obverse or reverse. A new script, clerical (lishu), comes into use in the Jin.

e. Tang: The clerical script becomes the norm until 959, when coins with regular script (kaishu) also begin to be issued.

*Id.* at 2,842.

In April 2009, the Guild purchased 23 ancient Chinese and Cypriot coins from Spink, a

numismatic dealer in London. (*See* Mot. Summary Judgment, Ex. 5, ECF No. 72-5 ("Tompa Dec."), Ex. N (Spink invoice).)[3] According to the Spink invoice, each coin was minted in Cyprus or China, had "[n]o recorded provenance," and had a "[f]ind spot" that was "unknown." (*Id.*) Pursuant to the parties' stipulation, the Chinese coins are numbered 1-15, and the Cypriot coins are numbered 16-22. (Coin Documentation Materials at 2.)

Later that month, the Guild imported the coins to the United States via a commercial flight from London to Baltimore. (*See* Tompa Dec., Ex. S (shipping and entry documents).) CBP detained the property at the time of entry for alleged violations of the CPIA and its implementing regulations. (*See id.*, Exs. P-R (CBP notices of detention and seizure).)

After months passed without the initiation of forfeiture proceedings, the Guild brought an action against, *inter alia,* the U.S. Department of State and CBP. *See Ancient Coin Collectors Guild v. U.S. Customs and Border Protection*, Civil No. CCB-10-322 ("declaratory judgment action"). The Guild alleged that the actions of both defendants violated the Administrative Procedure Act ("APA"), were *ultra vires*, and violated the First and Fifth Amendments to the United States Constitution. *Ancient Coin Collectors Guild v. U.S. Customs and Border Protection*, 801 F. Supp. 2d 383, 399 (D. Md. 2011). The government filed a motion to dismiss, which this court granted. *Id.* at 418. Regarding the APA claims, the court held that the actions of the State Department were not reviewable under the APA. *Id.* at 404. Regarding the *ultra vires* claims, the court concluded that "the import restrictions on Chinese and Cypriot coins, which have the effect of barring the importation of coins with unknown find spots, do not exceed the State Department's authority under the CPIA." *Id.* at 409. The court also dismissed the APA

---

[3] Both parties acknowledge an unexplained discrepancy between the number of coins listed in the dealer's invoice, 23, and the number currently in CBP's possession, 22.

and *ultra vires* claims against CBP, reasoning that CBP had merely carried out its statutory duty to promulgate and enforce regulations under the CPIA. *Id.* at 413-414. Finally, the court held that none of the constitutional claims had merit. *Id.* at 411-12, 414.

The Guild appealed, and the Fourth Circuit affirmed in October 2012. *Ancient Coin Collectors Guild v. U.S. Customs and Border Protection*, 698 F.3d 171, 175 (4th Cir. 2012) ("Fourth Circuit opinion"). As relevant here, the Fourth Circuit held that the State Department and CBP had not "acted *ultra vires* by placing import restrictions on all coins of certain types without demonstrating that all coins of those types were 'first discovered within' China or Cyprus." *Id.* at 181-82. The opinion explained:

> As an initial matter, the CPIA is clear that defendants may designate items by "type or other appropriate classification" when establishing import restrictions. 19 U.S.C. § 2604. State and CBP are under no obligation to list restricted items with more specificity than the statute commands, and they are certainly not required to impose restrictions on a coin-by-coin basis. Such a requirement would make the statutory scheme utterly unworkable in practice.

*Id.* at 182. Ultimately, the court concluded that

> CBP has listed the Chinese and Cypriot coins by type, in accordance with 19 U.S.C. § 2604, and CBP has detained them, in accordance with 19 U.S.C. § 2606. The detention was lawful as an initial matter, and the Guild had an opportunity at the time of detention to present evidence that the coins were subject to one of the CPIA exemptions. As explained above, the Guild need not have documented every movement of its coins since ancient times. To comply with § 2606, the Guild need demonstrate only that the Cypriot coins left Cyprus prior to 2007 and that the Chinese coins left China prior to 2009. It never so much as attempted to do so.

*Id.* at 183 (internal citations omitted). The Guild filed a petition for certiorari with the Supreme Court, which was denied. *Ancient Coin Collectors Guild v. U.S. Customs and Border Protection Agency*, 133 S. Ct. 1645 (2013).

The government initiated this forfeiture action on April 22, 2013, (Compl., ECF No. 1),

6

and the Guild filed a claim of interest in the defendant property, (Claim for Property, ECF No. 3). This court issued memorandum opinions on June 3, 2014, (ECF Nos. 22-23) ("June 3rd decision") and February 11, 2016, (ECF No. 63) ("February 11th decision"). Those opinions clarified the scope of the litigation and made various preliminary rulings.

In the June 3rd decision, which granted the government's motion to strike the Guild's answer,[4] the court observed that "it is abundantly clear that [the Guild] seeks to expand the scope of this forfeiture action well beyond the limits set by the Fourth Circuit in its controlling opinion." (Memorandum of June 3, 2014, at 1.) It clarified that "[t]he Fourth Circuit's opinion forecloses any further challenge to the validity of the regulations." *Id.* Quoting from dicta in the Fourth Circuit opinion,[5] the court identified the following burden-shifting framework as applicable in CPIA forfeiture proceedings:

> Under the CPIA, the government bears the initial burden in forfeiture of establishing that the coins have been "listed in accordance with section 2604," 19 U.S.C. § 2610, which is to say that they have been listed "by type or other appropriate classification" in a manner that gives "fair notice . . . to importers," *id.* § 2604. If the government meets its burden, the Guild must then demonstrate that its coins are not subject to forfeiture in order to prevail. *See id.* § 1615.

(*Id.* (quoting *Ancient Coin Collectors Guild*, 698 F.3d at 185).)

The court explained that the importer bears the burden to show that

> the article in question was either (1) lawfully exported from its respective state while CPIA restrictions were in effect; (2) exported from its respective state more than ten years before it arrived in the United States; or (3) exported from its respective state before CPIA restrictions went into effect.[6]

---

[4] The court construed the government's motion to strike as directed at the Guild's amended answer. (Memorandum of June 3, 2014, ECF No. 22, at 2.)

[5] As the Guild observes, the Fourth Circuit's discussion of the anticipated forfeiture action is dicta. There is substantial overlap, however, between the CPIA provisions interpreted in that action and those that must be interpreted here. *See, e.g.,* 19 U.S.C. §§ 2601, 2604, 2606. To the extent that the Fourth Circuit's interpretation of the statute constitutes part of its holding, it is binding on this court. Where it constitutes dicta, this court cites to it for the soundness of its reasoning, not for any precedential effect.

[6] This excerpt is a quotation from a section of the Fourth Circuit opinion discussing the requirements of 19 U.S.C. §

(Memorandum of June 3, 2014, at 1-2 (quoting *Ancient Coin Collectors Guild*, 698 F.3d at 183).)

In the February 11th decision, which resolved several discovery-related motions, the court concluded that the Guild "seeks discovery not relevant to the issues the court will have to decide in this forfeiture action." (Memorandum and Order of February 11, 2016, ECF No. 63, at 1.) Specifically, the court denied the Guild the discovery it sought from State Department officials, noting that "[i]t is unlikely that the export control status of the coins under foreign law will be a proper defense in this forfeiture action." (*Id.*) The court also declined to allow "general discovery from the government about the circulation of Cypriot and Chinese coins." (*Id.* at 2.) It left open the possibility, however, that the Guild could rely on expert testimony to prove that "*these specific* coins were exported from their respective States before CPIA restrictions went into effect." (*Id.* at 1-2 (emphasis added).)

Now pending are the Guild's motion and the government's cross-motion for summary judgment.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*,

---

2606. There is a minor discrepancy in the second potential showing: the Fourth Circuit uses the phrase "more than ten years before it arrived in the United States," whereas the corresponding provision, § 2606(b)(2)(A), uses "not less than ten years before." Similarly, in the third potential showing, the Fourth Circuit uses "before CPIA restrictions went into effect," whereas § 2606(b)(2)(B) uses "on or before the date on which such material was designated." Because these discrepancies do not affect the Guild's claims, the court quotes this language without alteration.

673 F.3d 323, 330 (4th Cir. 2012)).  "A fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]"  *Anderson*, 477 U.S. at 247-48.  The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015).  At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

## ANALYSIS[7]

In this action, the United States alleges that the defendant property "is subject to forfeiture pursuant to 19 U.S.C. § 2609 because it was imported in violation of 19 U.S.C. § 2606 and 19 C.F.R. § 12.104a(b), in that [it] comprises archaeological material of China and Cyprus that is listed in 19 C.F.R. § 12.104g, and . . . [the Guild] failed to present the documentation required by Section 2606(b) within 90 days of the detention of such property by a customs officer."  (Compl. ¶ 17.)  The court considers, first, whether the government has satisfied its initial burden to show that the property has been "listed in accordance with section 2604."  (Memorandum of June 3, 2014, at 1 (quoting *Ancient Coin Collectors Guild*, 698 F.3d at 185)); *see United States v. Eighteenth Century Peruvian Oil*, 597 F. Supp. 2d 618, 623 (E.D. Va. 2009).

---

[7] In considering the Guild's motion for summary judgment, the court has reviewed the notices of supplemental authority submitted on February 16, 2017, (ECF No. 81), and March 20, 2017, (ECF No. 82).

If so, "the burden of proof . . . shifts to [the Guild] to establish, by a preponderance of the evidence, that the property is not subject to forfeiture, or to establish an applicable affirmative defense." *Peruvian Oil*, 597 F. Supp. 2d at 623. The government is entitled to summary judgment if the Guild fails to rebut its initial showing. *See id.*

I.    Statutory Framework[8]

Section 2609 of the CPIA, the cause of action for this forfeiture proceeding, provides that "[a]ny designated archaeological or ethnological material . . . which is imported into the United States in violation of section 2606 . . . shall be subject to seizure and forfeiture." 19 U.S.C. § 2609(a). Section 2606 makes it unlawful to import "[any] designated archaeological or ethnological material that is exported (whether or not such exportation is to the United States) from the State Party after the designation of such material under section 2604 . . . unless the State Party issues a certification or other documentation which certifies that such exportation was not in violation of the laws of the State Party." *Id.* § 2606(a). "Designated archaeological or ethnological material" is a term of art defined in the CPIA. As relevant here, it includes "any archaeological . . . material of the State Party" which is "covered by an agreement under this chapter" and "listed by regulation under section 2604." *Id.* § 2601(7).

Section 2604 provides that, "[a]fter any agreement enters into force under section 2602 . . . , the Secretary [of the Treasury], in consultation with the Secretary of State, shall by regulation promulgate (and when appropriate shall revise) a list of the archaeological or ethnological material of the State Party covered by the agreement." *Id.* § 2604. Material may be listed by type, but "each listing made under this section shall be sufficiently specific and precise to insure that (1) the import restrictions under section 2606 . . . are applied only to the archaeological and

---

[8] CBP has promulgated regulations implementing the CPIA, which are codified at 19 C.F.R. §§ 12.104-12.104i.

ethnological material covered by the agreement . . . ; and (2) fair notice is given to importers and other persons as to what material is subject to such restrictions." *Id.*

Under § 2606, the importer must present one of three kinds of documentation to the customs officer at the time of making entry to the United States: (1) "the certificate or other documentation of the State Party" described in § 2606(a), *id.* § 2606(b)(1); (2) "satisfactory evidence" that the article was exported from the State Party at least 10 years before it arrived in the United States and that the importer owned it for a year or less before it arrived in the United States, *id.* § 2606(b)(2)(A); and (3) "satisfactory evidence" that the article was exported from the State Party on or before the date the import restrictions took effect, *id.* § 2606(b)(2)(B). "Satisfactory evidence" means the specific types of sworn declarations and statements described in § 2606(c). *Id.* § 2606(c). If the importer fails to present such documentation, the customs officer "shall refuse to release the material," starting a 90-day clock. *Id.* § 2606(b). The importer must produce the required documentation during that period; if it does not, the material becomes "subject to seizure and forfeiture." *Id.*; *see id.* § 2609(a).

Forfeiture proceedings under the CPIA are governed by a combination of CPIA provisions and generally applicable statutes. Section 2609 provides that "[a]ll provisions of law relating to seizure, forfeiture, and condemnation for violation of the customs laws shall apply to seizures and forfeitures [under the CPIA], insofar as such provisions of law are applicable to, and not inconsistent with, the provisions of this chapter." *Id.* § 2609(a). Most civil forfeiture proceedings fall under the Civil Asset Forfeiture Reform Act ("CAFRA"), 18 U.S.C. § 983, which applies to "all civil forfeitures under federal law unless the particular forfeiture statute is specifically exempted in 18 U.S.C. § 983(i)(2)." *United States v. 144,774 Pounds of Blue King*

11

*Crab*, 410 F.3d 1131, 1134 (9th Cir. 2005); *see also* 18 U.S.C. § 983(i)(1)-(2)(A). Because 18 U.S.C. § 983(i)(2)(A) "specifically exempt[s]" provisions codified in Title 19, however, CAFRA does not apply to forfeiture proceedings brought under the CPIA. *Peruvian Oil*, 597 F. Supp. 2d at 622. The applicable statute is therefore 19 U.S.C. § 1615, which sets out the burden of proof in actions "brought for the forfeiture of any vessel, vehicle, aircraft, merchandise, or baggage seized under the provisions of any law relating to the collection of duties on imports or tonnage." Under this statute, the burden of proof in customs actions lies with the claimant, provided that the government has shown probable cause for the forfeiture. 19 U.S.C. § 1615. Congress partially altered this burden for forfeiture proceedings brought under the CPIA, providing that, "[n]otwithstanding the provisions of section 1615 . . . , the United States shall establish . . . in the case of any material subject to the provisions of section 2606 . . . , that the material has been listed by the Secretary [of the Treasury] in accordance with section 2604." *Id.* § 2610. Thus, the government bears the initial burden in CPIA forfeiture proceedings.

II.   <u>Burden of Proof in Forfeiture Proceedings Under the CPIA</u>

This court laid out the applicable burden-shifting framework in its June 3rd decision. That decision, quoting from the Fourth Circuit's discussion of the anticipated forfeiture action, explained:

> Under the CPIA, the government bears the initial burden in forfeiture of establishing that [material subject to § 2606 has] been "listed in accordance with section 2604," 19 U.S.C. § 2610, which is to say that [it has] been listed "by type or other appropriate classification" in a manner that gives "fair notice . . . to importers," *id.* § 2604. If the government meets its burden, the [claimant] must then demonstrate that its [property is] not subject to forfeiture in order to prevail. *See id.* § 1615.

(Memorandum of June 3, 2014, at 1 (quoting *Ancient Coin Collectors Guild*, 698 F.3d 171 at

12

185).)

This framework is consistent with the district court's approach in *United States v. Eighteenth Century Peruvian Oil*, which appears to be the sole decision regarding CPIA forfeiture proceedings based on violation of 19 U.S.C. § 2606.  In *Peruvian Oil*, the district court determined the proper burden-shifting framework in a CPIA forfeiture action by "reading . . . together" 19 U.S.C. § 1615, the general statute, and 19 U.S.C. § 2610, a section of the CPIA.  It reasoned:

> The generally-applicable burden-shifting statute in Title 19 provides that, in all forfeiture actions brought against "any . . . merchandise[ ] or baggage seized under the provisions of any law relating to the collection of duties on imports or tonnage . . . the burden of proof shall lie upon [the] claimant."  19 U.S.C. § 1615.

> Within CPIA, however, Congress expressly stated that, "[n]otwithstanding the provisions of [19 U.S.C. § 1615], in any forfeiture proceeding brought under [CPIA]" where the property "is claimed by any person, the United States shall establish" that property subject to 19 U.S.C. § 2606 "has been listed by the Secretary in accordance with [19 U.S.C. § 2604]."  19 U.S.C. § 2610(1).

> [I]t thus appears that 19 U.S.C. § 2610 places the initial burden on the Government to show that CPIA applies. After that is accomplished, 19 U.S.C. § 1615 places the burden of proof in the remainder of the action on the claimant. *See An Original Manuscript Dated November 19, 1779*, 1999 WL 97894, *4 (S.D.N.Y. Feb. 22, 1999) ("Congress plainly directs the court to treat a CPIA forfeiture as any other forfeiture except that the burden of proof is initially on the government, not on the claimant.").

> Thus, in a CPIA forfeiture action, the United States bears the initial burden to show that the seized property is listed in accordance with 19 U.S.C. § 2604 and properly subject to the import restrictions of 19 U.S.C. § 2606.[9]

---

[9] The *Peruvian Oil* standard differs from the one articulated in this court's June 3rd decision in that it makes explicit the requirement that the property must be "properly subject to the import restrictions of 19 U.S.C. § 2606." Because material becomes subject to § 2606 at the time it is "listed in accordance with section 2604," however, that requirement is incorporated under either standard.  *See* 19 U.S.C. §§ 2601(7), 2604, 2606, 2610. In any case, as the Fourth Circuit has held and the Guild's expert has acknowledged, § 2606 applies here.  *Ancient Coin Collectors Guild*, 698 F.3d at 183 (holding the "CBP has detained [the coins], in accordance with 19 U.S.C. § 2606" and that "[t]he detention was lawful as an initial matter"); (Mot. Summary Judgment, Ex. 4, ECF No. 72-4 (declaration of Michael McCullough), at 5-6 (explaining that "[t]he coins we [*sic*] invoiced by Spink and shipped to the United States from the United Kingdom where they were seized by [CBP] because the coins are a type that are subject to

*Peruvian Oil*, 597 F. Supp. 2d at 622-23 (alterations in original).

Phrased differently, the government carries the initial burden to show that the property is "designated [archaeological] material exported from a State that is a party to the UNESCO Convention and a bilateral agreement with the United States." *Id.* at 623 (citing 19 U.S.C. §§ 2606, 2604, 2602). "Once the Government makes this initial showing, the burden of proof then shifts to Claimant to establish, by a preponderance of the evidence, that the property is not subject to forfeiture, or to establish an applicable affirmative defense." *Peruvian Oil*, 597 F. Supp. 2d at 623.

III.    <u>Motion and Cross-Motion for Summary Judgment</u>

The Guild raises three arguments in support of its motion for summary judgment. First, it contends that it has rebutted the government's initial showing, if any, through the submission of expert testimony. Second, with respect to coins 7-11 and 14-15, the Guild asserts that the burden never shifted to it because government failed to make out a prima facie case. Third, the Guild asks the court to reconsider its prior rulings on issues related to burden of proof and fair notice. The government responds that it has satisfied its initial burden; that it is in the process of returning coins 7-11 and 14-15, which will moot the Guild's arguments with respect to those coins; and that the court should not reconsider its previous rulings, which were correct. Further, the government contends that it is entitled to summary judgment as to coins 1-6, 12-13, and 16-22 because the Guild has not established a valid exception or defense to forfeiture. It does not seek summary judgment as to coins 7-11 and 14-15.

---

import restrictions under the [CPIA]").)

A.  Government's Initial Burden

As discussed above, the government has the initial burden to show that property subject to 19 U.S.C. § 2606 is "listed in accordance with section 2604."  (*See* Memorandum of June 3, 2014, at 1 (quoting *Ancient Coin Collectors Guild*, 698 F.3d at 185)); *see also* 19 U.S.C. § 2610. Section 2604 provides that, after an Article 9 agreement enters into force, "the Secretary . . . shall by regulation promulgate (and when appropriate shall revise) a list of archaeological or ethnological material of the State Party covered by the agreement."  19 U.S.C. § 2604.  This listing "shall be sufficiently specific and precise to insure that (1) the import restrictions under section 2606 . . . are applied only to the archaeological and ethnological material covered by the agreement . . . ; and (2) fair notice is given to importers and other persons as to what material is subject to such restrictions."  *Id.*  It is perfectly proper, however, for the regulations to list restricted material "by type or other appropriate classification."  *See id.*

The Fourth Circuit previously held that "CBP has listed the Chinese and Cypriot coins by type, in accordance with 19 U.S.C. § 2604."  *Ancient Coin Collectors Guild*, 698 F.3d at 183. CBP promulgated designated lists for coins of Cypriot type and coins from China in CBP Dec. 12-13 and CBP Dec. 09-03, extended by CBP Dec. 14-02, respectively.  19 C.F.R. § 12.104g(a). There is no dispute that China and Cyprus are "State Parties" under the CPIA, *see* 19 C.F.R. § 12.104b, nor does the Guild deny that the United States has entered into an Article 9 agreement with each under § 2602.  The only issue, then, is whether each of the 22 coins falls into the "type or other classification" of material included in the designated lists.

The starting point for this inquiry is the Spink invoice, which the parties agree accurately

describes the coins at issue.[10]  As this court previously acknowledged, the government may rely on the invoice alone where its "clarity and specificity" are sufficient to determine that a particular coin is covered by the designated list.  *Ancient Coin Collectors Guild*, 801 F. Supp. 2d at 400 n.12.  In reviewing the parties' claims, the court also has considered the stipulated coin documentation materials, which contain descriptions and photographs of the coins, and the Guild's responses to the government's request for admissions, among other documents.

Regarding coins 1-6, 12-13, and 16-22, the court finds that the government has satisfied its initial burden to show that the coins are of restricted types.[11]  Indeed, the Guild admitted in response to the government's request for admissions that coins 1-6 and 12-13 are of types that appear on the designated list for coins from China and that coins 16-22 are of types that appear on the designated list for coins of Cypriot type.  (Tompa Dec., Ex. H, ¶¶ 2-3.)

Regarding coins 7-11 and 14-15, the Guild contends that "the government has failed to establish its minimal burden to show that certain Chinese coins have been restricted at all."[12] (Mem. Mot. Summary Judgment, ECF No. 72-1, at 15.)  The Guild did not concede in response to the government's request for admissions that these particular coins are of types that appear on the designated list for China.  Rather, it stated that it was "unable to admit or deny whether [the coins] are of types that appear on the Chinese designated list" because it "ha[d] no working knowledge of the Chinese language."  (Tompa Dec., Ex. H, ¶ 2.)  The court agrees that the

---

[10] As noted, there is an unexplained discrepancy between the number of coins listed in the Spink invoice and the number of coins in CBP's possession, but the parties do not dispute the accuracy of the descriptions in the invoice.

[11] The Guild does not appear to contest that the government has made the required showing with respect to coins 1-6, 12-13, and 16-22, except insofar as it asks the court to reconsider its prior rulings.

[12] The government's most recent filing states that it is "no longer pursuing the forfeiture of coins 7--11 and 14--15" and is in the process of returning those coins to the Guild.  (*See* Reply Cross-Mot. Summary Judgment, ECF No. 78, at 2 n.1.)  Because the government argued in its cross-motion that the Guild was not entitled to summary judgment, however, and because the Guild's claims have not yet been mooted by return of the coins, the court will consider whether the government has established a prima facie case.

relevant documents, including the Spink invoice, are insufficient to establish that coins 7-11 and 14-15 are of types that appear on the Chinese designated list.  Because the government has not produced a Chinese language expert or provided any other evidence showing that the coins are of restricted types, the court finds that the government has failed to satisfy its initial burden regarding coins 7-11 and 14-15.

The government's arguments to the contrary are unavailing.  In its cross-motion, the government contends that the Guild is not entitled to summary judgment because it "offered no evidence to identify [coins 7-11 and 14-15] as not appearing on the designated list, and thus failed to rebut the government's initial showing regarding these coins."  (Mem. Cross-Mot. Summary Judgment, ECF No. 76-1, at 22.)  This description mischaracterizes the parties' respective burdens of proof.  The initial burden lies with the government to show that the coins have been "listed . . . in accordance with section 2604," not with the claimant to prove that they have not.  19 U.S.C. § 2610.  As the government has provided no evidence to establish that the coins are of types that appear on the designated list, there was no "initial showing" for the Guild to rebut.

Alternatively, the government asserts that it is in the process of returning the coins to the Guild and that the Guild's arguments with respect to those coins "will soon be moot."  (Cross-Mot. Summary Judgment, ECF No. 76, at 1.)  Although the government had begun the return process at the time it filed its cross-motion in August 2016, that process does not appear to have concluded.  (*See* Letter from Peter Tompa, ECF No. 79; Letter from Molissa Farber, ECF No. 80.)  In a letter dated January 3, 2017, the Guild informed the court that "the parties have not been able to agree about the conditions for the return of the coins" and renewed its request for

summary judgment as to all of the coins.  (Letter from Peter Tompa at 1.)  The government replied the following day, requesting that "the Court refrain from ruling as to coins 7--11 and 14--15 while the parties continue to work towards the return of these seven coins."  (Letter from Molissa Farber at 2.)

Given the divergent positions of the parties, the court sees no reason to delay ruling on the Guild's pending request for summary judgment as to coins 7-11 and 14-15.  The government has failed to carry its initial burden, and the Guild is entitled to judgment as a matter of law.  Moreover, although the return process has been ongoing for more than seven months, it has not resulted in the return of the coins to the Guild.  Thus, the court will grant the Guild's motion for summary judgment as to coins 7-11 and 14-15.[13]

### B.  Guild's Burden on Rebuttal

As discussed above, the government has made out a prima facie case with respect to coins 1-6, 12-13, and 16-22.  The burden therefore shifts to the Guild "to establish, by a preponderance of the evidence, that the property is not subject to forfeiture, or to establish an applicable affirmative defense."  *Peruvian Oil*, 597 F. Supp. 2d at 623.

The CPIA places the burden on the importer to provide specific documentation, either at the time of entry or during the 90-day period following the customs officer's refusal to release the material, showing that designated archaeological material is "eligible for import" to the United States.  *Ancient Coin Collectors Guild*, 698 F.3d at 182 (citing 19 U.S.C. § 2606).

---

[13] Although the Guild has not filed a separate motion for attorneys' fees and costs, it has stated its intention to seek them in its motion for summary judgment and reply.  (*See* Mot. Summary Judgment, ECF No. 72, at 1; Reply Mot. Summary Judgment, ECF No. 77, at 5 n.3.)  Because the Guild has provided no argument or supporting documentation that would allow the court to resolve this matter, the court does not construe these statements as constituting a pending motion for attorneys' fees and costs.  The Guild may file a motion for attorneys' fees and costs as to any claims on which it has prevailed, citing appropriate authority.

Section 2606 sets out these documentation requirements in subsections (a) and (b).

Section 2606(a), titled "Documentation of lawful exportation," provides:

No designated archaeological or ethnological material that is exported (whether or not such exportation is to the United States) from the State Party after the designation of such material under section 2604 of this title may be imported into the United States unless the State Party issues a certification or other documentation which certifies that such exportation was not in violation of the laws of the State Party.

19 U.S.C. § 2606(a).

Section 2606(b), titled "Customs action in absence of documentation," authorizes the government to "refuse to release the material," and ultimately seize it and initiate forfeiture proceedings, if the importer is unable to present one of the following forms of documentation:

- "the certificate or other documentation of the State Party required under subsection (a) of this section," *id.* § 2606(b)(1);

- "satisfactory evidence that such material was exported from the State Party . . . not less than ten years before the date of such entry and that neither the person for whose account the material is imported (or any related person) contracted for or acquired an interest, directly or indirectly, in such material more than one year before that date of entry," *id.* § 2606(b)(2)(A); or

- "satisfactory evidence that such material was exported from the State Party . . . on or before the date on which such material was designated under section 2604 of this title," *id.* § 2606(b)(2)(B).

*See also id.* § 2606(c) (defining "satisfactory evidence" to mean certain kinds of sworn declarations and statements).

In the declaratory judgment action, the Fourth Circuit summarized the requirements of § 2606 as follows:

Such documentation must show that the article in question was either (1) lawfully exported from its respective state while CPIA restrictions were in effect; (2) exported from its respective state more than ten years before it arrived in the United States; or (3) exported from its respective state before CPIA restrictions

19

went into effect.

*Ancient Coin Collectors Guild*, 698 F.3d at 182-83 (citing 19 U.S.C. § 2606).  The June 3rd decision quoted this language, and the Guild has used it as a road map for its showing on rebuttal.  (*See* Mem. Mot. Summary Judgment at 14 ("The Court's June 3, 2014 Order governs this matter."); 15-16 (stating that expert testimony will show that the defendant property was "exported from its respective state before CPIA restrictions went into effect"); 15 (stating that expert testimony will show that the defendant property was "lawfully exported from its respective state while CPIA restrictions were in effect").)

The Guild has admitted that it cannot provide the documentation specified in § 2606. (Mot. Prot. Order, Ex. 4, ECF No. 48-5 (May 27, 2009, letter from Peter Tompa).)  Instead, in order to satisfy its burden, it relies on the expert testimony of Douglas Mudd, a numismatic expert, and Michael McCullough, an expert in the international trade of cultural artifacts.  (Mem. Mot. Summary Judgment at 15; *see* Mot. Summary Judgment, Ex. 3, ECF No. 72-3 ("Mudd Dec."); Mot. Summary Judgment, Ex. 4, ECF No. 72-4 ("McCullough Dec.").)  The Guild offers Mudd's testimony to prove, by a preponderance of the evidence, that the coins were "exported from [their] respective state before CPIA restrictions went into effect."  (Mem. Mot. Summary Judgment at 15-16 (quoting Memorandum of June 3, 2014, at 2).)  It offers McCullough's testimony to prove, as a matter of law, that the Cypriot coins were "lawfully exported from [their] respective state while CPIA restrictions were in effect," (*id.* at 15), and to raise an issue of material fact as to whether the Chinese coins were "lawfully exported from [their] respective state while CPIA restrictions were in effect," (Reply Mot. Summary Judgment at 28 n.15).

The parties dispute whether the Guild may rely on scholarly evidence to rebut the

government's prima facie case.  According to the Guild, such evidence is permissible because the applicable provision, 19 U.S.C. § 1615, "contemplates that a claimant in a court case will be able to use any admissible evidence or testimony to rebut any presumption that an article is subject to forfeiture." (Mem. Mot. Summary Judgment at 25.)  The government's position is that § 1615 does not control because "19 U.S.C. §§ 2602, 2604, and 2606 specify the evidence permitted in a forfeiture case under the CPIA." (Mem. Cross-Mot. Summary Judgment at 16 n.4.)  Section 2609 provides that a general statute like § 1615 applies only to the extent that it is "not inconsistent with" the CPIA.  19 U.S.C. § 2609(a).

The court's previous rulings do not resolve this dispute.  In discussing the "burden . . . on the importer," the June 3rd decision quoted from the Fourth Circuit's summary of the documentation required under § 2606, but it did not address whether forfeiture claimants may rely on other kinds of evidence.  (*See* Memorandum of June 3, 2014, at 1-2.)  The February 11th decision also left the question open.  (*See* Memorandum and Order of February 11, 2016, at 1-2 (explaining that the court was "not at this point ruling that expert testimony can have no role in th[e] determination").

Here, it is not necessary for the court to comprehensively delimit the boundaries of these competing provisions because the government is entitled to judgment as a matter of law regardless of which evidentiary standard applies.  If claimants in CPIA forfeiture actions are limited to the forms of documentation specified in § 2606, the Guild—which has conceded that it cannot provide such documentation—has failed to satisfy its burden to rebut the government's prima facie case.  If, on the other hand, § 1615 permits courts to consider scholarly evidence, the court still must look to the substantive law to determine whether the proffered expert testimony

establishes the Guild's entitlement to summary judgment or raises a disputed issue of material fact.  Neither the Mudd nor McCullough testimony supports the Guild's claims.

The proffered testimony of Douglas Mudd, which relates to the circulation of Chinese and Cypriot coins in general, does not constitute the kind of particularized evidence contemplated in this court's February 11th decision.  (*See id.* at 1 (denying the Guild "general discovery from the government about the circulation of Cypriot and Chinese coins" and explaining that the Guild could offer evidence that "*these specific* coins were exported from their respective states before CPIA restrictions went into effect") (emphasis added).)  The Guild offers Mudd's testimony to show that it is "more probable than not that the Spink coins left Cyprus and China hundreds or thousands of years ago as currency, or decades ago as collectables," (Mem. Mot. Summary Judgment at 19), but it identifies no authority for the position that a CPIA forfeiture claimant may rebut the government's prima facie case with general evidence regarding a *type* of restricted material.  Indeed, this approach runs contrary to the logic of the CPIA, which entrusts decisions about whether a certain type of material should be restricted to specific executive-branch officials, advised by CPAC, 19 U.S.C. §§ 2602, 2605, and provides forfeiture proceedings as the forum for importers to contest the applicability of the restrictions to specific articles of property, *id.* § 2609.  Nothing in the CPIA suggests that Congress intended for courts to weigh the determinations implicit in the designated lists against testimony from claimants' experts regarding a particular type of restricted material.  On the contrary, the CPIA provision governing seizure and forfeiture precludes the parties from relying on provisions of law that would undermine the function of the designated lists.  *See* 19 U.S.C. § 2609(a) (providing that general forfeiture laws apply "insofar as [they] are . . . not inconsistent with[ ] the provisions of

[the CPIA]").

The proffered testimony of the Guild's other expert, Michael McCullough, also fails to rebut the government's initial showing.  The Guild offers this testimony to establish that "the export of the Cypriot coins at issue from the U.K. was a legal export under E.U. and Cypriot law that satisfies the requirements of the CPIA."[14]  (Mem. Mot. Summary Judgment at 19.)  Because the relevant foreign export controls apply to each of the coins at issue, McCullough's evidence, unlike Mudd's, is sufficiently particularized to the defendant property.  It does not support the Guild's case, however, because the lawfulness of an export from the United Kingdom under EU and Cypriot law has no bearing on whether the defendant property was "lawfully exported from its respective state while CPIA restrictions were in effect."

As noted, the requirement that material be "lawfully exported from its respective state while CPIA restrictions were in effect" comes from the Fourth Circuit's discussion of § 2606, which this court quoted in its June 3rd decision.  (*See* Memorandum of June 3, 2014, at 2 (quoting *Ancient Coin Collectors Guild*, 698 F.3d at 183).)  This language corresponds to § 2606(a), which prohibits the import of material restricted at the time of its export from the State Party "unless the State Party issues a certification or other documentation which certifies that such exportation was not in violation of [its] laws."  19 U.S.C. § 2606(a).  Under § 2606(b), "the certificate or other documentation of the State Party" is one of the three forms of documentation an importer may present, either at the time of entry or during the 90-day detention period, to establish that its property is not "subject to seizure and forfeiture."  *Id.* § 2606(b).

Viewed in this context, it is clear that the proffered testimony regarding foreign export

---

[14] The Guild is moving for summary judgment as to only the Cypriot, not Chinese, coins on the basis that they were lawfully exported from their respective state while the CPIA restrictions were in effect.

controls does not show that the Cypriot coins were "lawfully exported from [their] respective state while CPIA restrictions were in effect." Subject to an exception that does not apply here,[15] the drafters of the CPIA provided only one way for an importer to show that the export of restricted material from a State Party was lawful: by producing a certificate or other documentation from the State Party.[16] *See id.* §§ 2606(a),(b)(1). There is no room for expert testimony on this point. This conclusion follows from the structure as well as the language of § 2606. *Compare id.* § 2606(a) (placing a positive restriction on the kinds of material that "may be imported into the United States") with *id.* § 2606(b) (imposing a documentation requirement on importers to avoid the detention and seizure of property). By contrast, if the Guild is correct that the "satisfactory evidence" limitation does not apply to a forfeiture claimant seeking to show that its property was "exported from its respective state [at least 10] years before it arrived in the United States," *see id.* § 2606(b)(2)(A), or "exported from its respective state [on or] before [the date] CPIA restrictions went into effect," *see id.* § 2606(b)(2)(B), it is possible that—depending on the circumstances of the case—relevant and sufficiently particularized expert testimony could play a role.

Although the Guild identifies the language of the June 3rd decision as the basis for McCullough's proffered testimony, it does not ground its claim that the coins were "lawfully

---

[15] Under § 2606(b)(2)(A), the importer may show that its property is eligible for import by providing satisfactory evidence that the material was exported from the State Party at least 10 years before the date of entry and that the importer owned it for a year or less before the date of entry. 19 U.S.C. § 2606(b)(2)(A). Because the import restrictions on Chinese and Cypriot coins are less than 10 years old, however, such a showing would not operate as an exception here. *See id.* § 2606(a) (certification requirement applies only to designated material exported from the State Party while restrictions were in effect).

[16] As noted, the importer may show that current import restrictions do not apply to an article by providing satisfactory evidence that the material was exported from the State Party on or before the date the restrictions went into effect. *Id.* § 2606(b)(2)(B). In that case, no certificate or other documentation from the State Party would be required, since § 2606(a) applies only to material exported from the State Party while applicable restrictions were in effect.

exported from [their] respective state while CPIA restrictions were in effect" in the source of that language, § 2606. Rather, it points to a separate provision, § 2601(2), as the relevant authority. Section 2601(2), located in the definitions section of the CPIA, provides that "archaeological or ethnological material of the State Party" is material that, *inter alia*, "was first discovered within" and "is subject to export control by" the State Party. *Id.* § 2601(2). According to the Guild, the restricted types of Cypriot coins are not "subject to export control by" the State Party, and therefore do not qualify for designation under § 2604, because the export of such material is authorized by the relevant EU, UK, and Cypriot laws. In other words, the Guild contests whether these types of coins should have been included in the designated lists in the first place. The Fourth Circuit opinion forecloses this line of argument. *Ancient Coin Collectors*, 698 F.3d at 181-83.

In the alternative, McCullough's testimony fails because it purports to show that the coins were "lawfully exported" from the United Kingdom, rather than Cyprus. Under the CPIA, the relevant export is the original export from the State Party, not any subsequent export to a third country, even if the latter is the export that brought the material to the United States. 19 U.S.C. § 2606(a) (prohibiting the import of "designated archaeological or ethnological material that is exported (whether or not such exportation is to the United States) from the State Party after the designation of such material under section 2604"). As the Fourth Circuit opinion makes clear, the terms "State Party" and "respective state" refer to "the country that has requested the import restrictions." *Ancient Coin Collectors Guild*, 698 F.3d at 176-77; *id.* at 183 ("To comply with § 2606, the Guild need demonstrate only that the Cypriot coins left Cyprus prior to 2007 and that the Chinese coins left China prior to 2009."). Because Cyprus, not the UK, is the "State Party"

or "respective state," the Guild cannot satisfy its burden by demonstrating that "the export of the Cypriot coins at issue from the U.K. was a legal export under E.U. and Cypriot law."[17]  (*See* Mem. Motion Summary Judgment at 19.)

    The court also must consider whether McCullough's proffered testimony as to the Chinese coins creates an issue of material fact that defeats the government's motion for summary judgment.  McCullough's report concludes that, because China's cultural property laws do not apply in Hong Kong, any Chinese coins that were exported from Hong Kong, rather than from a mainland Chinese port, "could have been lawfully exported from China while the CPIA restrictions were in effect."  (McCullough Dec. at 6.)  This evidence suffers from both of the defects discussed above.  First, it offers general conclusions that apply to an entire category of material—here, ancient Chinese coins exported from Hong Kong—without providing any evidence that the coins at issue were of that type.[18]  McCullough simply notes that the coins "*could* have been lawfully exported" from Hong Kong, and, "if they . . . were," his legal analysis would apply.  (*Id.* at 6 (emphasis added).)  Without some further link between the defendant property and McCullough's legal conclusions, his proffered testimony is not sufficiently particular to rebut the government's prima facie case.  Second, as discussed above, demonstrated compliance with foreign export control laws is not a substitute for showing that restricted material was lawfully exported from the State Party under § 2606(a).  Here, the Guild has not provided the required certificate or other documentation issued by the State Party; instead, McCullough suggests that the court should treat the export itself as proof of lawfulness.  (*Id.* at 9

---

[17] Because the McCullough testimony fails to satisfy the Guild's burden for multiple, independent reasons, the court declines the Guild's invitation to consider the effect of EU member status on the lawfulness of an export from Cyprus or the UK.

[18] McCullough's analysis may be deficient for other reasons as well.  The court does not address its merits.

("The export from Hong Kong would be sufficient proof to show legal export as required by the CPIA and the June 3rd Order.").)  This approach is not consistent with the requirements of the CPIA.

In summary, even if 19 U.S.C. § 1615 provides the applicable evidentiary standard and authorizes the Guild to rely on scholarly evidence, that scholarly evidence must be particularized to the coins at issue and either establish that the Guild is entitled to judgment as a matter of law or raise a disputed issue of material fact.  The Mudd testimony and McCullough testimony regarding the Chinese coins are insufficiently particularized, and the McCullough testimony regarding both the Cypriot and Chinese coins fails as a matter of law.  The Guild has provided no other evidence or argument that "establish[es], by a preponderance of the evidence, that the property is not subject to forfeiture, or . . . establish[es] an applicable affirmative defense." *See Peruvian Oil*, 597 F. Supp. 2d at 623.  Accordingly, the government is entitled to summary judgment as to coins 1-6, 12-13, and 16-22. *See id.*

C.  Guild's Request for Reconsideration

Finally, the Guild requests that this court reconsider its prior rulings related to the burden of proof and fair notice.  Specifically, the Guild asks the court to adopt the following analysis regarding the government's initial burden:

> [T]o make out a *prima facie* case for forfeiture under the CPIA, the government must establish that an object of archaeological interest: (1) is of a type that appears on the designated list; (2) was first discovered within and subject to the export control of the UNESCO State Party for which restrictions were granted; and (3) that it was illegally removed from the State Party after those restrictions were granted.

(Mem. Mot. Summary Judgment at 33.)

The Guild's primary claim is that the plain meaning and legislative history of the CPIA

require the government to prove, before the burden shifts to the Guild, that each coin is of a type that appears on the designated list and "was first discovered within" and "is subject to export control by" Cyprus or China.  To the extent that this argument challenges the validity of the regulations, which incorporate the "first discovered within" and "subject to export control by" requirements at the designated list stage, *see* 19 U.S.C. §§ 2601(2), 2601(7), 2604, it is foreclosed by the Fourth Circuit opinion, *Ancient Coin Collectors Guild*, 698 F.3d at 181-83.  To the extent that it relates to aspects of the CPIA's forfeiture procedures that were not before the Fourth Circuit, the Guild misreads the statute, and its argument misses the mark.

The Guild's argument appears to conflate two terms defined in the CPIA: "archaeological . . . material of the State Party" ("archaeological material of the State Party") and "designated archaeological . . . material" ("designated archaeological material").  "Archaeological material of the State Party" is "any object of archaeological interest . . . which was first discovered within, and is subject to export control by, the State Party."  19 U.S.C. § 2601(2).  "Designated archaeological material" is "any archaeological . . . material of the State Party" which is "covered by an agreement under this chapter" and "listed by regulation under section 2604."  *Id.* § 2601(7).  Only "designated" material is subject to import restrictions under § 2606 and potentially "subject to seizure and forfeiture" under § 2609.[19]  *Id.* §§ 2606(a), 2609(a).

The Guild's source for the "first discovered within" and "subject to export control by" requirements is the reference to "archaeological material of the State Party" in § 2604, which

---

[19] Section 2606 prohibits the import of "*designated* archaeological or ethnological material that is exported (whether or not such exportation is to the United States) from the State Party after the designation of such material under [19 U.S.C. § 2604] . . . unless the State Party issues a certification or other documentation which certifies that such exportation was not in violation of the laws of the State Party."  19 U.S.C. § 2606(a) (emphasis added).  Section 2609, the cause of action for this forfeiture proceeding, provides that "[a]ny *designated* archaeological or ethnological material . . . which is imported into the United States in violation of section 2606 . . . shall be subject to seizure and forfeiture."  *Id.* § 2609(a) (emphasis added).

provides that "the Secretary . . . shall by regulation promulgate (and when appropriate shall revise) a list of the archaeological or ethnological material of the State Party covered by the agreement." *Id.* § 2604.  Rather than supporting the Guild's arguments, however, this provision illustrates the distinction between "archaeological material of the State Party" and "designated archaeological material."  "Archaeological material of the State Party" includes all material that *may* be restricted by CBP pursuant to an applicable agreement, whereas "designated archaeological material" is the subset that *has* been restricted through the process of creating or amending a designated list.  *See id.* §§ 2601, 2604.  By asserting that the government must prove in every forfeiture action that "designated archaeological material" does, in fact, constitute "archaeological material of the State Party," the Guild seeks to impose a burden on the government that the CPIA does not: the requirement to prove, as part of its initial showing, that the decisions incorporated into its underlying regulations are sound.  The Fourth Circuit's opinion forecloses this line of argument.  *Ancient Coin Collectors Guild*, 693 F.3d at 182 ("According to the Guild, the government and the district court effectively read the 'first discovered' requirement out of the statute.  We are not persuaded." (internal citation omitted)); (*see also* Memorandum of June 3, 2014, at 2 ("The Guild suggests that the government will be required to establish that the coins were 'first discovered within' and 'subject to the export control' of either Cyprus or China.  The Guild is not correct.  This argument also is foreclosed by the Fourth Circuit's opinion.") (internal citations omitted).)  Further, nothing in the statute or legislative history supports the Guild's proposal to substitute one defined term, "archaeological material of the State Party," for another, "designated archaeological material," in §§ 2606 and 2609.[20]  The court declines the Guild's invitation to rewrite the statute in this way.

---

[20] The Guild asserts that its proposed requirements are consistent with the Convention and laws of Cyprus and

The Guild raises two separate Fifth Amendment due process arguments.  First, it argues that the court has violated due process principles by altering the burden of proof assigned by Congress.  Second, it contends that the regulations failed to provide "fair notice" regarding what was prohibited.  The language of the statute and the Fourth Circuit opinion defeat both arguments.

First, as explained above, the burden-shifting framework in CPIA forfeiture actions is governed by a combination of generally applicable laws and provisions of the CPIA.  Reading 19 U.S.C. § 1615 and 19 U.S.C. § 2610 together, Congress placed the initial burden on the government and the burden of rebuttal on the claimant.  In forfeiture actions involving material subject to § 2606, the government must establish "that the material has been listed . . . in accordance with section 2604."  19 U.S.C. § 2610.  The burden then transfers to the claimant to rebut the government's prima facie case.  *Peruvian Oil*, 597 F. Supp. 2d at 622-23 (citing 19 U.S.C. § 1615).  Because this analysis gives effect to, rather than altering, the burden-shifting framework created by Congress, the Guild has not raised a valid due process claim.

Second, the Guild argues that the regulations fail to provide it with "fair notice" of what is prohibited.  In a CPIA forfeiture action, the relevant regulations are the designated lists.  *See* 19 U.S.C. §§ 2606, 2609.  The Fourth Circuit previously concluded that the designated lists satisfy 19 U.S.C. § 2604's "fair notice" requirement, holding that "CBP has listed the Chinese and Cypriot coins by type, in accordance with 19 U.S.C. § 2604."  *Ancient Coin Collectors Guild*, 698 F.3d at 183; *see* 19 U.S.C. § 2604 (requiring that the designated lists "be sufficiently specific and precise to insure that . . . fair notice is given to importers and other persons as to

China.  Where such requirements are not authorized by the CPIA, however, this consistency does not support the Guild's claims.

what material is subject to such restrictions").  The Guild does not appear to argue that the alleged due process violations arise from a lack of specificity or precision in the designated lists. Rather, the Guild grounds its "fair notice" claim in the premise that 19 C.F.R. § 12.104 conflicts with the "first discovered within" and "subject to export control by" requirements of the CPIA. As discussed above, however, the provisions of the CPIA that govern this action—including §§ 2606, 2609, and 2610—relate to whether a given type of material *has* been added to a designated list, not whether it should have been.  Thus, for purposes of this forfeiture action, it does not appear that a conflict involving the "first discovered within" and "subject to export control by" requirements would deprive the Guild of fair notice, so long as the designated lists included sufficiently specific and precise descriptions of the types of items subject to forfeiture.  Further, to the extent that the Guild seeks to relitigate its challenge to the validity of the regulations in the form of a due process claim, that argument is inappropriate here.[21]

## CONCLUSION

For the reasons stated above, the Guild's motion will be granted as to coins 7-11 and 14-15 and denied as to coins 1-6, 12-13, and 16-22.  The government's cross-motion will be granted as to coins 1-6, 12-13, and 16-22.  A separate order follows.

3/31/17                                             /S/
Date                                              Catherine C. Blake
                                                 United States District Judge

---

[21] Although the Guild is correct that "[a] forfeiture action is an entirely different sort of animal [from] a declaratory judgment action," (*see* Reply Mot. Summary Judgment at 18), that distinction does not save its "fair notice" claim. The Fourth Circuit's interpretation of § 2604 constituted part of its holding, not dicta, and it applies squarely to the Guild's theory here.  *See Ancient Coin Collectors Guild*, 698 F.3d at 181-82.